# SOUTHERN COACH LINES, INC. v. BALL
## —250 S. W. (2d) 104.

Middle Section.   January 18, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Martin & Cochran, of Nashville, for plaintiff in error.

Williams, Cummings & West, and Hugh C. Howser, all of Nashville, for defendant in error.

HOWELL, J. The plaintiff, Howard E. Ball, Jr., as Administrator of the estate of his father Howard E. Ball, deceased, filed this suit against the defendant Southern Coach Lines, Inc. for $50,000 damages as a result of the death of Howard E. Ball in an accident in which the automobile owned and driven by the deceased collided with a bus owned and operated by the defendant on Charlotte Avenue in Nashville.

The accident happened about 10:15 a.m. on March 3, 1950, on Charlotte Avenue betwen 25th Avenue North and 26th Avenue North in Nashville, at a point in front of a Thoni Service Station which is on the north side of Charlotte Avenue, about 200 feet west of the overpass over the rails of the N. C. & St. L. Railway.

The declaration alleges in the first count that:

"On said occasion the deceased, Howard E. Ball, drove his automobile near the center of Charlotte Avenue, and came to a stop in front of the said Thoni Service Station, for the purpose of turning to his left, and into said service station. After waiting for other vehicles that were travelling toward the west to pass, the deceased, while driving in a careful and prudent manner, attempted to complete his turn and continue across the northerly side of Charlotte Avenue to said service station. Said vehicle operated by the deceased made the turn and proceeded across the northerly side of Charlotte Avenue, and had reached a point on the northerly edge of said street when said automobile was struck on the right side

by a large passenger bus owned by the defendant, Southern Coach Lines, Inc., bearing Tennessee License Number 1-Taxi-D-3518, and being operated by the servant, agent or employee of said defendant in the course of its business, and being operated in a careless, reckless, unlawful, and negligent manner by the said servant, agent, or employee. Plaintiff alleges that said bus was travelling in a westerly direction, and as it topped the hill or overpass approaching plaintiff, it came down said hill toward the automobile which plaintiff's intestate was driving, at a fast, reckless and dangerous speed, and plaintiff further alleges that said large passenger bus was not under the control of the driver, and that said driver was not keeping a proper lookout ahead.''

The second count of the declaration alleges that the defendant's bus was being operated recklessly and in violation of Code Section 2681, and the third count charges a violation of Code Section 2682 in that the bus was being driven at a careless rate of speed such as to endanger the life, limb and property of the deceased and in excess of the statutory speed in that particular location. The fourth count of the declaration alleges a violation of the City Ordinance which has reference to driving a vehicle in a wilful and wanton manner in disregard of the safety of persons or property of others, and the fifth count charges a violation of an ordinance of the City of Nashville prohibiting the driving of a vehicle at a speed greater than is reasonable and prudent and greater than 30 miles per hour.

The remaining counts of the declaration have reference to the damages to the 1937 Buick automobile owned and operated by the deceased at the time of the accident.

The defendant pleaded not guilty and the case was tried before the Judge and a jury in the Circuit Court and resulted in a verdict for the plaintiff for $26,675 and costs.

By proper procedure the defendant has appealed in error to this Court and has assigned errors.

It is insisted for the defendant that the trial Court erred in failing to sustain the defendant's motion for peremptory instructions, that there is no material evidence to support the verdict, that there is no proof of negligence on the part of the defendant which proximately caused the injuries sustained by the deceased and that the plaintiff's intestate was guilty of contributory negligence which bars a recovery. There are several more insistences of the defendant raised in the twenty-seven assignments of error.

The record discloses that the accident happened substantially as alleged in the declaration and there is little controversy as to the principal facts. The deceased was driving East on Charlotte Avenue and near the center of the street which is about 42 feet wide, and he came to a stop on the South of the center of the street in front of the Thoni Service Station which is on the North side of the Street and therefore to the left of the deceased, he having stopped in order to make a left turn into the service station. After waiting for other vehicles that were travelling West on Charlotte Avenue to pass, the deceased attempting to complete his turn into the station, proceeded across the North side of the street and in front of the bus of the defendant which was proceeding West on its right or the North side of the street when the collision occurred. About 200 feet East of the scene of the accident is the overpass over the railroad and the

pavement of the street slopes downward on the Eastern side of the hill to where the collision took place.

The plaintiff insists that the negligence of the defendant's driver in driving at an excessive speed and in a reckless and careless manner is established by the testimony of Haywood Western and F. D. Hooper, two of his witnesses.

Heywood Western of Milan Tennessee, a truck driver, had stopped at Thoni's Service Station to get gas for his truck and he testified in part as follows:

"Q. Now, tell us just what you saw at the time of the accident, when you first saw the bus, when you first saw the truck, and how they came together. A. Well, I just drove up there to get gas and I hadn't been there but just a second or two and I was looking up that way, of course.

"By the Court:

"Was your truck headed east or west? A. I was coming into town.

"The Court: All right, east, then.

"A. And I saw the bus coming over the hill and I looked around and about the time I looked around I heard a racket and by the time I looked back around they were just hitting together. Now, I didn't see Mr. Ball until the bus was done hitting him.

"Q. Now, you have driven for a number of years and you are familiar with the speed of vehicles. A. Yes sir.

"Q. Do you think you can say approximately how fast that bus was coming over the hill? A. Well, just to guess—

"The Court: Wait a minute.

"By Judge Williams:

"Q. Your judgment, not your guess.

"The Court: Wait one second. We are not going to have any guessing. If from your experience and what you saw you can give us your best judgment as to the speed,—

"Well, I would say it was making 40 or 45 miles an hour.

"Q. Is this about the position of both the bus and the car immediately after the accident (indicating on blackboard)? A. Well, the car was knocked around and it was headed back toward Nashville and it was knocked over against the curb.

"Q. How close was it to the curb? A. It was right against the curb and the bus, the skidmarks showed from the way it slid the right front wheel was locked on the bus and the one that done most of the skidding, as I remember it. But I know that the right front wheel was locked and it skidded a good ways and then it turned angling in toward the curb."

Again this witness on cross-examination testified in part:

"Q. I understand you to say you glanced up and saw the bus coming? A. That is right.

"Q. And then glanced away? A. Yes sir.

"Q. And didn't pay any particular attention to the bus? A. Well, I saw the bus. I just was looking up that way. I saw the bus coming and I just looked off. There was somebody walked around the side of my truck, Of course, I didn't know nobody there, but there was somebody walked up there and I just glanced around at them and about that time I heard a racket and then I looked back around.

"Q. So that your determination of the speed of this bus was made by glancing up there and then your attention was attracted by somebody walking around by your truck and you looked around to see who that

was, is that correct? A. Well, I was looking at the bus.

"Well, I thought you said you glanced up and saw the bus? A. I did.

"Q. And then someone walked around behind your car? A. They walked around beside it.

"Did you look at them? A. Yes sir.

"Q. And then the next thing you heard was the collision? A. That is right.

"By the Court:

"Q. When you first saw the bus, how far away was it in feet, your best judgment? Well it was on top of that hill.

"Q. Well, give us some idea about how far you think it was when you first saw it? A. Oh, about 200 feet.

"By Mr. Cochran:

"Q. And then after you saw it, this person came by and you looked around to see what this person was doing, and then the next thing you heard the collision?

"By the Court:

"Q. The time that you saw it up there 200 feet away, did you see it again until you heard the collision? A. After I looked up there and looked away I didn't see it anymore until I looked around and they were hitting."

Again on re-direct examination this witness testified:

"By Judge Williams:

"Q. After you first saw the bus up there, did you see it travel any distance? A. Yes sir, I saw it travel some distance.

"Q. About how far would you say? A. Oh, about 30 feet, I would say.

"By Mr. Cochran:

"Q. Do you mean that you can see a vehicle travel 30 feet and estimate its speed?

"The Court: Wait a minute. Give him the advantage of where it was and if it was coming to him or travelling sideways.

"By Mr. Cochran:

"Q. Well, situated as you were, looking, with the automobile not passing you, or the vehicle not passing you but coming toward you, and you could see it for a distance of 30 feet, from that can you give an honest opinion as to the speed of that vehicle? A. If I see them I can.

"Q. You think you can? A. Yes sir."

The witness F. D. Hooper was a passenger on the bus involved in the accident and he testified in part:

"Q. You were a passenger on the bus? A. Yes sir.

"Q. Where did you get on the bus? A. I suppose I got on over here at Church Street.

"Q. Where were you going? A. I was going to the N. C. & St. L. Shops.

"Q. Where were you riding on the bus? A. Well, the best I remember, I was about middleways of the bus on the right-hand side going out

"Q. Do you know who was riding with you? A. Yes sir, this Mr. Sutton was on the bus with me.

"Q. Did you know Mr. Sutton? A. Yes sir.

"Q. Did you know him prior to that time? A. Yes sir.

"Q. Have you ridden the bus on other occasions? A. I beg your pardon.

"Q. Have you ridden the bus on other occasions? A. Oh yes, I have ridden.

"Q. Did you drive an automobile yourself before you had your heart trouble? A. Before I had heart trouble, yes sir.

"Q. Are you generally familiar with the speed of vehicles? A. Well, I used to be mighty good when I was with the Company. I was mighty good. I was familiar with the speed of automobiles and trains and all.

"Q. Please tell the Court and jury about the speed of this bus you were riding on. A. That bus was running 40 or 45 miles an hour, around 40 miles an hour, I will be safe in saying.

"Q. Now when did you first know there was an accident or some danger or something? A. When did I first know it?

"Q. Yes sir. A. Well, when it hit."

█ It was for the jury to determine from the evidence whether or not the plaintiff had met the burden of proving that the accident was caused by the negligence of the operator of the defendant's bus.

The jury decided this issue in favor of the plaintiff and there was evidence upon which the verdict could be based.

We are therefore of the opinion that the trial Judge did not commit error in denying defendant's motion for a directed verdict in its favor.

There are a number of assignments of error which complain of errors in the charge and the refusal of the trial Judge to grant special requests.

We have carefully read the charge and the proceedings upon the argument of the motion for a new trial and cannot say that we find any errors which affected the verdict of the jury. The charge was full and fair and the requests denied were substantially covered in the charge.

■ Under the circumstances of this case and considering the present economic conditions the verdict is not excessive.

The assignments of error are overruled and the judgment of the Circuit Court is affirmed. A judgment will be entered here in favor of the plaintiff and against the defendant for the amount of the judgment below and interest from its date and the cost of the case.

Affirmed.

Felts and Hickerson, JJ., concur.

HOWELL, J. I dissent from the opinion of the majority for the reason that in my opinion there is no substantial and material proof of any negligence on the part of the defendant. The testimony of the truck driver who was getting gasoline at Thoni's and who glanced up and saw the bus travel about 30 feet, coming towards him, and the testimony of the exrailroad man who was riding on the bus is not sufficiently convincing or substantial to establish that they were qualified to testify upon the subject of the speed of the bus and therefore not such testimony as would justify a conclusion that the defendant's bus was being operated negligently.

I am of the opinion that the motion of defendant for peremptory instructions in its favor should have been granted for the further reason that the gross negligence of the plaintiff's intestate in driving his car near the center of the street and, after stopping, then pulling to his left across the North side of the street and in front of the bus and into its path, when he either saw or should have and could have seen the bus approaching on its proper side of the street, was the proximate cause of the accident and in law prohibited a recovery. It was the duty of the

intestate to proceed with caution in making this left turn when the bus was in sight and approaching him in close proximity.

I would reverse the judgment and dismiss the suit.